FILED
IN CLERKS OFFICE

2005 JAN 24  P 4: 16

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-------------------------------------------------------X
TIG INSURANCE COMPANY,
as successor-in-interest to
TRANSAMERICA INSURANCE
COMPANY

              Plaintiff,

v.                        Civil Action No. 04-12729-MLW

FIRST STATE INSURANCE COMPANY,

              Defendant.
-------------------------------------------------------X

## DEFENDANT FIRST STATE INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE CERTAIN PORTIONS OF PLAINTIFF'S PETITION PURSUANT TO RULE 12(f) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Defendant First State Insurance Company ("First State") respectfully submits this memorandum of law in support of its motion to strike certain portions of Plaintiff TIG Insurance Company's ("TIG") petition to confirm (the "Petition").[1]

### PRELIMINARY STATEMENT

First State moves to strike certain portions of the Petition as immaterial and impertinent. As First State does not dispute that the Award[2] was properly rendered, allegations in the Petition concerning the parties' respective positions in the arbitration and TIG's interpretation of the

---

[1] As the Court is aware, First State's January 7, 2005 Motion for an Order of Impoundment and Sealing of Confidential Material Pursuant to Local Rule 7.2 ("Motion to Impound") is currently pending. First State moves to strike certain portions of the Petition in the event that the Court denies the Motion to Impound. First State brings this motion to strike prior to the Court's determination of the Motion to Impound only because Rule 12(f) of the Federal Rules of Civil Procedure requires that motions to strike be made before responding to a pleading. First State's response to the Petition is due on January 25, 2005.

[2] The January 30, 2004 arbitration award and the August 13, 2004 award are collectively referred to herein as the "Award."

Award have no relevance. Similarly irrelevant to the question of confirmation are certain exhibits that TIG has annexed to the Petition, such as the parties' arbitration briefs and correspondence with each other and the panel. For such irrelevant allegations and documents to be publicly accessible would not only exacerbate TIG's breach of the confidentiality agreement between the parties (the "Confidentiality Agreement") and violate the arbitration panel's expectations of confidentiality, but would also enable TIG and others to improperly argue that the unreasoned Award has precedential value.[3] Accordingly, because the irrelevant allegations and documents are prejudicial to First State, and should never have been disclosed in the first place, its motion to strike should be granted.

## FACTS

Between 1975 and 1981, TIG and First State entered into a series of excess of loss reinsurance contracts pursuant to which TIG agreed to reinsure First State for losses arising from various claims. (the "Reinsurance Contracts"). (See Petition, ¶ 4.) The Reinsurance Contracts each contained an arbitration clause requiring the arbitration of disputes "with reference to the interpretation of this contract or the rights of either party with respect to any transaction under this contract." (Petition, ¶ 5.) On June 6, 2002, First State demanded that TIG submit to

---

[3]   First State's concerns are well-founded. Indeed, where as here, there is no dispute that the arbitration award sought to be confirmed is valid, the First Circuit has held that confirmation may create in the future "unpredictable pressure and aspersions upon the party against whom the order runs":

> Entry of a declaration "confirming" the award may be taken to imply that the defendant is in fact violating it. Courts, after all, do not enjoin parties from violating the law without proof of a real likelihood that such will happen. At very least, it is hard to fathom what the present debate over confirmation portends. Both parties profess to agree that the Stutz award is binding. A decree confirming it at this time will merely give the parties something to argue about. Under the circumstances, Article III's prudential values and concerns of judicial economy strongly counsel against the entry of a confirmatory order.

Derwin v. General Dynamics Corp., 719 F.2d 484, 491-92 (1st Cir. 1983).

arbitration to resolve certain disputes that had arisen between the parties concerning the interpretation of the Reinsurance Contracts. (Id., ¶ 7.)

In accordance with the arbitration clauses, an arbitration panel was duly selected, and an organizational meeting was held on February 3, 2003. (Petition, ¶ 10.) At this meeting, the panel acknowledged that "there should be some confidentiality involved in this arbitration" and directed the parties "to get together and work out some kind of a written agreement." (Transcript of February 3, 2003 Organizational Meeting ("February 3, 2003 Tr."), annexed as Ex. 1 to the January 7, 2005 Declaration of Thomas M. Elcock ("Elcock Decl."), at 38:2-38:13.) The panel also ordered that the arbitration be kept confidential until the parties reached an agreement on the subject. (February 3, 2003 Tr., Elcock Decl. Ex. 1, at 39:17-39:24.)

On September 26, 2003, TIG and First State entered into the Confidentiality Agreement requiring, inter alia, that a party seeking judicial relief in connection with the arbitration request that the court seal papers generated, and information exchanged, in the arbitration:

> 4. Disclosure of Arbitration Information may be made:
>    b. in connection with court proceedings relating to any aspect of the arbitration, including, but not limited to, motions to confirm, modify, or vacate an arbitration award[.]
>
> 6. Subject to court approval, all disclosures made pursuant to paragraph 4(b) shall be sealed.

(Confidentiality Agreement, Exhibit 2 to the Elcock Decl., ¶¶ 4, 6.)[4]

---

[4] The Confidentiality Agreement defines confidential "Arbitration Information" as follows:

> a. all pleadings, position statements, briefs, exhibits, and deposition and hearing transcripts generated in the course of this arbitration;
>
> b. all documents created and/or produced for the arbitration by the opposing party or third-parties;
>
> c. the Panel's final award and any interim awards/decisions; and

3

After the Confidentiality Agreement was executed, First State and TIG submitted pre-hearing briefs to the arbitrators, and an evidentiary hearing was held in Boston, Massachusetts between January 7, 2004 and January 9, 2004. (Petition, ¶¶ 11, 12.) Both parties presented evidence at the hearing. (Id., ¶ 13.) On January 30, 2004, the panel issued an award, which was supplemented on August 13, 2004. (Petition, ¶¶ 17, 25.) The Award was "unreasoned" in that the panel did not discuss or explain the reasoning behind its decision. (Id.) First State did not move to vacate the Award, and has not otherwise challenged it in any way. (See Petition, ¶ 26.)

On or about December 30, 2004, TIG filed the Petition, seeking judicial confirmation of the Award. TIG violated the Confidentiality Agreement by not moving to impound and seal the Petition and exhibits thereto. Instead of complying with the express terms of that agreement, TIG sought emergency relief requesting that the Court order First State to demonstrate why the file should be impounded. The Court denied TIG's emergency motion, and directed that any motion to seal be filed by January 7, 2005. First State timely filed its Motion to Seal, which is currently pending before the Court.

The Petition contains TIG's characterization of the facts concerning the parties' respective positions on the issues before the panel (e.g., Petition, ¶¶ 14-16, 23, 25), and TIG's interpretation of the Award (Petition, ¶ 21), and includes as exhibits the parties' arbitration briefs and correspondence with each other and the panel.[5] First State now moves to strike paragraphs 11, 14, 15, 16, 17 (to the extent that it provides the language of the Award), 18, 19, 20, 21, 22, 23,

---

      d.    all correspondence, oral discussions, and information exchanged in connection with the proceedings.

(Confidentiality Agreement, Elcock Decl. Ex. 2, ¶ 2.)

[5] While First State does not agree with TIG's characterization of the facts, it contends that such facts are immaterial in this confirmation proceeding because the parties do not dispute the validity of the Award. Therefore, there is no reason for First State to present a counterstatement of facts.

4

24, 25 (to the extent that it provides TIG's description of the Award and the language of the Award), and 26 (except to the extent that it alleges that "First State has not objected to TIG's offset") (collectively the "Immaterial Allegations"). First State also moves to strike Exhibits 1, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 and 18 (the "Immaterial Documents"). As discussed below, the disclosure of the Immaterial Allegations and Immaterial Documents in violation of the Confidentiality Agreement would severely prejudice First State.[6]

## ARGUMENT

### THE COURT SHOULD STRIKE ALL ALLEGATIONS IN THE PETITION THAT ARE IMMATERIAL

Rule 12(f) of the Federal Rules of Civil procedure provides that immaterial and impertinent allegations in a pleading may be stricken by the Court:

> **Motion to Strike.** Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed. R. Civ. P. 12(f).

The Immaterial Allegations and Immaterial Documents are wholly irrelevant and impertinent to the question of confirmation, and should therefore be stricken pursuant to Rule 12(f), because First State did not move to vacate the Award, or otherwise challenge its validity. Where a party has not challenged an arbitration award, to the extent permitted by Derwin (see supra note 3), the Petition *must* be confirmed. Taylor v. Nelson, 788 F.2d 220, 225 (4th Cir. 1986) (holding that "confirmation can only be denied if an award has been corrected, vacated or

---

[6] First State also moves to strike TIG's proposed order and judgment, annexed as Exhibit 1 to the Petition, as the proposed order and judgment improperly attempts to have this Court put its imprimatur on TIG's interpretation of the Award. First State respectfully submits that an order confirming the Award should provide nothing more than that "the Award, comprising the award issued on January 30, 2004 and the award issued on August 13, 2004, is hereby confirmed."

modified in accordance with the Federal Arbitration Act."). See also Menke v. Monchecourt, 17 F.3d 1007, 1009 (7th Cir. 1994) ("In fact, section 9 of the Act specifically states that the district court *must* confirm the award unless it finds that the award should be vacated, modified, or corrected pursuant only to specifically enumerated grounds in 9 U.S.C. §§ 10, 11.") (emphasis in original). Thus, the Petition need not, and should not, have alleged any more than that a valid arbitration agreement existed between the parties, an arbitrable dispute arose, a final award was rendered, and the parties have not challenged it. With respect to exhibits, TIG should have annexed only those documents necessary to support such allegations, i.e., the arbitration agreement and the demand. Anything more is extraneous, and should be stricken. See Kurker v. Kassler & Feuer, P.C., No. Civ.A.98-CA-12457RGS, 1999 WL 33601320, at *1 (D. Mass. July 1, 1999) ("A court is empowered by Rule 12(f) of the Rules of Civil Procedure to strike from a Complaint 'any redundant, immaterial, impertinent or scandalous matter.'").

Moreover, TIG breached the Confidentiality Agreement when it filed the Petition without first seeking its impoundment and sealing. By including in the Petition more than what was absolutely necessary to enable the Court to determine whether the Award should be confirmed, TIG brazenly exacerbated that breach. The Court should not permit such misconduct, and should grant First State's motion to strike the Immaterial Allegations and Immaterial Documents.

Most importantly, First State would be severely prejudiced if the Immaterial Allegations and Immaterial Documents were not stricken, because the Award was unreasoned, i.e., the panel did not discuss the reasoning behind its conclusions. As First State explained in its Memorandum of Law in Support of Its Motion to Seal (the "Impoundment Memorandum"):

> These principles indicate that the primary reason confidentiality is so important, at least with respect to the disclosure of panel awards, is that oftentimes an arbitration award lacks a recitation of the facts. The lack of any express factual foundation for a panel's decision provides essentially no precedential value and

6

makes it nearly impossible for another panel to apply the decision to different, unrelated factual circumstances. Such concerns are present here, as the Arbitration Panel rendered an unreasoned award.

(Impoundment Memorandum, at 6.)

However, by including in the Petition allegations concerning the parties' respective positions and TIG's interpretation of the Award, and annexing the parties' arbitration briefs and correspondence, TIG has provided a biased, one-sided context which could enable others to improperly argue that the unreasoned Award has precedential value, thereby prejudicing First State. By prohibiting the unnecessary disclosure of Arbitration Information, the Confidentiality Agreement was specifically designed to prevent the result that TIG's actions could cause.

Thus, the Petition should include only such information and documents necessary to establish that there was a valid arbitration agreement between the parties, an arbitrable dispute arose between them, a final award was rendered, and the parties have not challenged the validity of that award. The inclusion of anything else in a publicly-filed document would severely prejudice First State. Accordingly, in the event that the Court denies the Motion to Seal, it should grant First State's Motion to Strike.

## CONCLUSION

For the foregoing reasons, First State's Motion to Strike should be granted.

First State Insurance Company
By its attorneys,

*[signature]*

Thomas M. Elcock (BBO #548027)
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, Massachusetts 02109
(617) 456-8000

7

-and-

Mound, Cotton, Wollan & Greengrass
One Battery Park Plaza
New York, NY 10004
(212) 804-4200

Dated: January 24, 2005

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney(s) of record for each other party by mail on __1/24/05__

_____