FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2005 FEB -7  P 3: 50

U.S. DISTRICT COURT
DISTRICT OF MASS.

TIG INSURANCE COMPANY,
as successor-in-interest to
TRANSAMERICA INSURANCE COMPANY,

                    Petitioner,

-against-

FIRST STATE INSURANCE COMPANY,

                    Respondent.

CIVIL ACTION NO.
04CV12729MLW

## TIG'S OPPOSITION TO FIRST STATE'S MOTION TO STRIKE, WITH SUPPORTING MEMORANDUM OF LAW

TIG Insurance Company, as successor-in-interest to Transamerica Insurance Company ("TIG"), submits this opposition and memorandum in response to the motion of First State Insurance Company ("First State") to strike statements contained in, and exhibits annexed to, TIG's Petition to Confirm an Arbitration Award (the "Petition").[1] As discussed below, the information that First State seeks to strike from the Petition is statutorily required or otherwise relevant and pertinent to this proceeding. The Federal Arbitration Act (the "FAA") requires that a petition to confirm include a copy of the award sought to be confirmed.[2] The information in

---

[1] On January 24, 2005, First State's counsel requested a twenty-four hour extension (until January 25, 2005) to respond to the Petition. Counsel explained that due to heavy snowfall in the Boston area, counsel was unable to comply with the January 24, 2005 deadline for the filing of First State's response. TIG consented to the extension but, within a few hours of doing so, First State filed its motion to strike. First State's request for an extension to respond to the Petition appears to have had less to do with the New England snowstorm than First State's belated realization that Federal Rule of Civil Procedure 12(f) requires that a motion to strike be made "before responding to a pleading."

[2] As indicated in the Petition, the arbitration panel (the "Panel") issued an award on January 30, 2004 (the "Award"). The Panel held that TIG "prevailed" on both issues in the arbitration (the "Addendum A Issue" and the "Asarco Issue") and that TIG's "construction" of Addendum A was the correct one. Three months after the Panel's issuance of the Award, First State told TIG that it believed the Award entitled TIG to no relief, and that TIG had lost the Addendum A Issue. TIG notified the Panel of First State's position and the Panel confirmed its prior ruling (the "Supplemental Award"). The Award and the Supplemental Award are collectively the Panel's "Final Award" and First State's characterization of the two rulings (in its Motion to Strike and its Answer) as separate awards is mistaken.

NYLIB2 248370.5

the Petition relating to the nature of the parties' dispute and the parties' positions in the arbitration provides the Court with the context in which the Final Award was rendered and is relevant in this proceeding to demonstrate why it is so important that the Court reject First State's suggestion that the Court simply issue an order "declaring that the Award is confirmed" (Answer, at 4) and adopt the Order and Judgment proposed by TIG (which incorporates the text of the Final Award).[3] Doing so will ensure that First State cannot later argue that it "prevailed" on any of the issues in the arbitration and will extinguish for all time TIG's liability for the $1,246,984.82 that was at issue in the arbitration.

First State also failed to demonstrate any legitimate prejudice that would result from the denial of its motion to strike. TIG did not (as First State contends) "breach" the parties' confidentiality agreement. TIG was not required to move for an order sealing the file. Indeed, TIG, First State and the Panel recognized that arbitration information could become publicly-available if later filed in a court proceeding relating to the arbitration. Moreover, First State has not identified a single factual allegation contained in the Petition that is inaccurate, misleading, proprietary or inflammatory. First State has not done so because it cannot do so. Each of the factual allegations contained in the Petition is relevant, accurate and supported. First State's contention that it would be prejudiced by the disclosure of arbitration information is an unsupported and insupportable red herring. Its motion to strike should be denied in its entirety.

---

[3] First State erroneously contends that TIG's proposed order and judgment "improperly attempts to have this Court put its imprimatur on TIG's interpretation of the Award." See FS MOL, at note 6. TIG is not interpreting the award but, rather, asking the Court in its order and judgment to "enforce the clear meaning and intent" of the Final Award. See Island Creek Coal Sales Co. v. Gainesville, 764 F.2d 437 (6th Cir.), cert. denied, 474 U.S. 948 (1985). In any event, the mere fact that First State is contending that TIG is interpreting the Final Award would justify TIG putting before the Court the entire arbitration record (rather than select portions as now are before the Court).

## ARGUMENT

## THERE IS NO BASIS TO STRIKE ANY
## INFORMATION FROM THE PETITION

A. **The Statements and Exhibits that First State Seeks to Strike are Relevant and Pertinent to this Proceeding**

Federal Rule of Civil Procedure 12(f) empowers a district court to strike from "any pleading any . . . redundant, immaterial, impertinent, or scandalous matter." Motions to strike are "generally disfavored and will usually be denied <u>unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties</u>." See Demoulis v. Sullivan, 1993 U.S. Dist. Lexis, 3250, *17 (D. Mass. 1993) (internal quotations, citations omitted, emphasis added); Strong v. Quinn, 1982 U.S. Dist. Lexis 12845, *2-3 (D. Mass. 1982) (same). First State contends that much of the Petition, <u>including the language of the arbitration award itself</u>, is immaterial and impertinent to this proceeding and should be stricken "in the event that the Court denies [First State's] Motion to Seal." See First State's Memorandum of Law in Support of its Motion to Strike (the "FS MOL"), at 6-7.[4] According to First State, it would be "severely prejudiced" if the Court denies its motion to strike (and does not seal the entire file) because "TIG and others" would then be able to "improperly argue that the unreasoned Award has precedential value." See FS MOL, at 2, 6. First State's position is baseless.

The information that First State seeks to strike from the Petition is germane. Section 13 of the FAA (which governs this proceeding) requires a party seeking confirmation of an arbitration award to provide the Court with a copy of the award. First State's contention that

---

[4] In making its motion to strike contingent upon whether the Court grants its motion to seal, First State has revealed its true motivation. First State does not genuinely believe that the information it seeks to strike is irrelevant. First State's one and only goal is to ensure that others not learn that it lost on an issue, giving First State the flexibility to continue billing others using an inappropriate methodology.

"TIG should have annexed [to the Petition] only ... the arbitration agreement and the demand" (FS MOL, at 6) is thus flatly contradicted by the FAA.[5] TIG was statutorily required to provide the Court with both the Award and the Supplemental Award (Exhibits 8 and 18 to the Petition) and those exhibits and the references in the Petition to the Award and the Supplemental Award (¶¶17 & 25) are properly before the Court.

First State's request to strike the allegations (and exhibits) reflecting the background to the parties' dispute (both during and after the arbitration) is equally unavailing. This information specifically relates to the Final Award and provides the Court with the background information necessary to understand the issues that were before the Panel and how and why the Panel later supplemented the Award. The contextual information eliminates any uncertainty that the Award and Supplemental Award should be treated collectively as the Final Award and that the Panel was acting within the scope of its authority (i.e., was not *functus officio*) when it rendered the Supplemental Award.

Moreover, the information relating to the background to the parties' dispute is relevant and should not be stricken because it establishes why it is so critically important that the Court enter judgment in the fashion proposed by TIG. As indicated above and as set forth in greater detail in the Petition (at ¶¶17-25), following the arbitration hearing, the Panel ruled that "TIG prevailed" on both issues in the arbitration and that TIG's "construction" of Addendum A applied. Nevertheless, three months after the issuance of the Award, First State told TIG that the Award entitled TIG to no relief whatsoever, i.e., that First State, not TIG, had prevailed on the

---

[5] If First State was correct and a petition to confirm an arbitration award should allege nothing more "than that a valid arbitration agreement existed between the parties, an arbitrable dispute arose, a final award was rendered, and the parties have not challenged it," then decisions confirming arbitration awards would never have a factual discussion. However, there are hundreds if not thousands of reported decisions arising from petitions to confirm arbitration awards which include lengthy factual discussions. Either these courts have all improperly included a discussion of the background to the parties' disputes in their reported decisions or, more likely, First State (which cited no authority to support its assertion) is wrong.

"Addendum A" issue.[6] TIG rejected First State's position and, following the submission of letter-briefs to the Panel, the Panel confirmed that TIG, as the Award stated, "prevailed" on the Addendum A issue.

TIG is justifiably concerned that First State again will dispute the plain meaning of the Award and, First State's motion papers confirm that that is precisely what First State might do. See FS MOL, at 2 (the Petition as drafted would "enable TIG . . . to improperly argue that the unreasoned Award has precedential value"). Confirmation of the Award in the fashion proposed by TIG (incorporating the text of the Award into the Court's judgment) is necessary to ensure that First State will not again have the opportunity to argue that words have no meaning beyond what First State says they mean.[7]

\*   \*   \*

The information that First State seeks to strike from the Petition is germane to this proceeding and, in some instances, statutorily required. For this reason alone, First State's

---

[6] First State's counsel is prone to misinterpreting unambiguous rulings, as a recent decision by this Court indicates. Employers Ins. of Wausau v. First State Ins. Group, 2004 U.S. Dist. Lexis 12712, \*13 (D. Mass. July 9, 2004). In Wausau, Judge Stearns criticized First State and First State's counsel for a "course of conduct" in misinterpreting one of Judge Stearns' prior rulings which was "both inexcusable and incomprehensible."

[7] While First State acknowledges that the Final Award "must be confirmed" (FS MOL, at 5-6) and in its Answer asks that the Court do so (Answer, at 4), First State hints that confirmation may be inappropriate because it has not "disputed" the Final Award. See FS MOL, at note 3 (citing Derwin v. General Dynamics Corp., 719 F.2d 484, 491-92 (1st Cir. 1983). First State is wrong on both the facts and the law. First, as explained above, First State "disputed" the applicability of the Award and, now, has questioned the applicability of the Final Award. Second, Derwin is inapplicable. Under the FAA (which governs this proceeding), whether or not First State has "disputed" the Final Award is irrelevant to a confirmation proceeding. The confirmation proceeding in Derwin was brought under the Massachusetts state arbitration statute which, unlike the FAA, did not contain a statute of limitations within which to seek confirmation. The Court thus found that confirmation of the award prior to a dispute concerning it was unnecessary. However, in the paragraph immediately following the sentences block-quoted by First State (which First State omits), the Court went on to note that:

> If there were a strict limitations period for actions to confirm [as there is under the FAA], one could reasonably argue that, even in the absence of any current dispute over an award's effect, a party should be entitled to obtain judicial confirmation in order to protect its rights under the award from lapse due to the passage of time.

Derwin, 719 F.2d at 492. Thus, where, as here, the FAA provides a one-year limitations period within which to seek confirmation of an arbitration award, confirmation of the award in the absence of a dispute is warranted.

motion should be denied. However, as discussed below, the motion also should be denied because First State has not (because it cannot) demonstrated any legitimate prejudice that would result from the denial of its motion.

**B.     First State has not established that it will be prejudiced by the denial of its Motion**

The key factual predicate underlying First State's "prejudice" argument -- that TIG "breached" the parties' confidentiality agreement (see FS MOL, at 6) -- is mistaken.[8] TIG has at all times adhered to its confidentiality obligations. The Confidentiality Agreement permits the disclosure of Arbitration Information in connection with court actions relating to any aspect of the arbitration, but provides that "subject to court approval, all [such] disclosures . . . shall be sealed." The Confidentiality Agreement does not require TIG to affirmatively move for an order sealing the file.

The reason the Agreement does not compel either party to seek an order sealing the file is because when First State and TIG were negotiating the terms of the Confidentiality Agreement, neither TIG nor First State sought to include such a provision. Compare Affidavit of Michael K. Robles (the "Robles Aff.") in Support of TIG's Opposition to First State's Motion to Strike, Ex. A (a June 16, 2003 letter from Robles to the Panel attaching (at Exhibit 1) a copy of TIG's proposed confidentiality agreement which stated (at 2) that "if Arbitration Materials are publicly filed with a court, First State or TIG may ask the court to impound (seal) its file")[9] with

---

[8]   Throughout its motion papers, First State states that TIG "breached" and/or "violated" the Confidentiality Agreement (see FS MOL, at 2, 4 & 6) and otherwise seeks to create the impression that TIG acted improperly. See id., at 6 ("the Court should not permit such misconduct"). While TIG unfortunately has grown accustomed to First State's rhetoric, as explained below, there is no basis whatsoever for First State's accusations of impropriety and, if anything should be stricken from the record, it is First State's unfounded accusations that TIG acted improperly.

[9]   TIG would not agree to the inclusion in the confidentiality agreement of a provision requiring it to move for an order sealing the file because, based upon its understanding of the law, a "confidentiality agreement typically does not constitute 'good cause' to seal a judicial proceeding." Robles Aff., Ex. A, at 5. In other words, a private agreement to keep materials confidential generally is not sufficient good cause to override the Constitutional presumption of public access to the courts. See, e.g., Travelers Ins. Co. v. Connecticut General Life Ins. Co., 2003 Conn. Super. Lexis 2756, *9 (Ct. Sup. Ct. Oct. 14, 2003) (the "court is not convinced that confidential financial

-6-

Robles Aff., Ex. B (a June 16, 2003 letter from Lloyd Gura to the Panel enclosing (at Ex. 1) First State's proposed agreement indicating (at 2) that "neither party [would] oppose a request by the other to place the proceeding under seal (if not originally filed under seal)" (emphasis added). The parties briefed their respective positions to the Panel and the Panel settled on the "subject to court approval..." language. Id., Ex. C.[10]  First State's contention that TIG "violated the Confidentiality Agreement by not moving to impound and seal the Petition and exhibits thereto" (see FS MOL, at 4) is not only inconsistent with the plain language of the Confidentiality Agreement but also with the positions advanced by both First State and TIG in the arbitration.

The foregoing notwithstanding, TIG sought to preserve the confidentiality of Arbitration Information because it recognized that First State (unlike TIG) might be interested in seeking an order sealing the file and that, if TIG did not then seek to file the papers under seal, any benefit of a later sealing order might be lost. Accordingly, TIG sought a Temporary Restraining Order to seal the proceeding until such time as the Court could consider First State's position on the issue of whether the proceeding should be sealed in whole or in part. At the

---

records may be sealed simply because parties have a confidentiality agreement or because the matter was initially handled in arbitration"). The reasoning of the Travelers court is especially apt here, where TIG and First State prior to the arbitration exchanged correspondence in the ordinary course of business setting forth one another's positions on the issues in the arbitration. There was nothing confidential or secret about First State's position on the issues prior to the arbitration and the arbitration does not somehow cloak First State's position on the issues with some type of super-secret status.

[10]   The use of the phrase "subject to court approval" demonstrates that the Panel recognized that a court might not accord confidential treatment to Arbitration Information.

advice of the Clerk of Court, TIG marked the Petition "Under Seal." See Petition, at 1.[11] Although the Court denied TIG's request for a Temporary Restraining Order, for reasons unknown to TIG, the Court Clerk has maintained the Petition and accompanying exhibits under seal since the day they were filed. See Robles Aff., Exs. D & E. Ironically, if TIG had proceeded in the manner suggested by First State (i.e., with the filing of a motion to seal), the Petition and the exhibits would not have been filed under seal from the outset and would have been publicly available from the date TIG filed the Petition until the Court ruled on the motion.[12] In other words, there cannot possibly have been any prejudice to First State arising from the manner in which TIG proceeded. TIG did everything it could to preserve confidentiality even though it was not required to do so.

Furthermore, First State's contention that it will be prejudiced if its motion to strike is denied because the public dissemination of the information it seeks to strike would "enable TIG and others to improperly argue that the unreasoned Award has precedential value" (FS MOL, at 2) is both irrelevant and wrong. There is no basis to strike material contained in or annexed to a pleading due to a concern that the party that submitted the pleading (or a third-party) would later seek to rely on the information to support a collateral estoppel argument. If that were the standard, pleadings would be stricken by courts on a daily basis. And, in any event, the confirmation of the Final Award does not adjudge the merits of the factual allegations

---

[11] Local Rule 7.2 requires that a motion to impound be made prior to the filing of the materials sought to be impounded. Since a motion cannot be brought prior to the commencement of an action (the filing of the Petition commences the action), a motion to impound, at best, could be filed simultaneously with the filing of the Petition. However, a motion to impound would not preserve the confidentiality of the confidential material from the outset. For this reason, TIG believed that its request for a temporary restraining order was the most appropriate course.

[12] First State's conduct belies its purported concern about the public dissemination of the Petition or information contained in or annexed to the Petition. On January 4, 2005, upon TIG's receipt of the Court's ruling denying the temporary restraining order, TIG advised First State of the ruling and of the potential that the Petition could become publicly available. See Robles Aff., Ex. D. Nevertheless, First State waited five business days (until the end of the business week) to file its motion to impound and, when First State did so, First State did not seek a ruling on an expedited or emergency basis.

contained in the Petition (which First State was free to deny and/or explain how and why TIG's characterization of the facts was inaccurate, misleading or both).

In any event, First State has not pointed to a single factual allegation that is inaccurate, misleading, proprietary or inflammatory. Instead, First State simply states that it "does not agree with TIG's characterization of the facts." See FS MOL, at note 5. The reason First State ducks the issue is because the Petition fairly sets forth both parties' positions. Indeed, TIG endeavored to eliminate any question concerning whether TIG had accurately set forth the parties' respective positions by annexing to the Petition both its own and First State's submissions to the Panel. If First State believed that TIG misstated any fact relating to the arbitration, First State's recourse was to deny the factual allegations in the Petition and/or to submit a counterstatement of facts, which First State (despite its rhetoric concerning the purported misrepresentations in the Petition) has failed to do. First State hardly could be heard to complain about prejudice resulting from relevant, accurate, factual allegations. First State simply has not demonstrated that it will be prejudiced by the information it seeks to strike.

C.  **First State's Motion to Strike is internally inconsistent and belied by its Answer**

To the extent there is any lingering doubt that First State's motion to strike should be denied, that doubt is dispelled by First State's own motion papers wherein First State affirmatively relies upon several of the paragraphs in the Petition that First State simultaneously seeks to strike as irrelevant. Compare FS MOL, at 4 (relying on the Petition, paragraphs 11-13, 17, 25 & 26 to support factual assertions) with First State's Motion to Strike, at 1 (indicating that paragraphs 11-13, 17, 25 & 26 should be stricken in whole or in part). First State's memorandum of law demonstrates that many of the paragraphs from the Petition that First State seeks to strike are germane. First State otherwise would have no reason to rely on them.

First State's Answer to the Petition also undermines its motion to strike. Following the filing of its motion to strike, First State apparently reconsidered its position and no longer asserts that some of the paragraphs in the Petition are irrelevant. For instance, First State responds to paragraph 14 of the Petition by "reserve[ing] the right to refer to the transcript of the proceeding for a recitation of what occurred." First State cannot object to TIG relying upon the arbitration record and, at the same time, reserve the right to do so itself. Similarly, in response to paragraph 17 of the Petition, First State "respectfully refers the Court to the text of the Award for its terms and conditions." Yet, in its motion to strike, First State asserts that TIG improperly annexed a copy of the Award to the Petition and seeks to strike the text of the Award from the Petition. See FS MOL, at 6 ("With respect to the exhibits [to the Petition], TIG should have annexed only . . . the arbitration agreement and the demand. Anything more is extraneous, and should be stricken."). Along the same lines, First State answers the factual allegations of paragraphs 19, 20, 22, 23 and 25 of the Petition by referring the Court to various exhibits to the Petition that First State seeks to strike.

Finally, and perhaps most importantly, First State's response to paragraph 23 of the Petition underscores the importance of confirmation and highlights why TIG saw fit to include in the Petition the background to the parties' dispute. First State denies TIG's allegation that First State took the position following the issuance of the Award that TIG was entitled to no monetary relief based upon the Panel's ruling on the Addendum A Issue and that it "continued to seek recovery of $1,246,984.82 from TIG." Confirmation of the Final Award will extinguish for all time any argument that TIG has any liability for the $1,246,984.82 that First State claimed was due from TIG.

## CONCLUSION

For the reasons set forth above, the Court should deny First State's motion to strike.

Dated:   Boston, Massachusetts
         February 7, 2005

                                        CETRULO & CAPONE LLP


                                        By: _____
                                            Adam G. Cohen (BBO No. 558689)

                                        Two Seaport Lane, 10th Floor
                                        Boston, MA 02210
                                        (617) 217-5500

                                        OF COUNSEL:
                                        John F. Finnegan
                                        Michael K. Robles
                                        CADWALADER, WICKERSHAM & TAFT LLP
                                        One World Financial Center
                                        New York, NY 10281
                                        (212) 504-6000

02626-0001
360214v1

## CERTIFICATE OF SERVICE

I, Adam G. Cohen, BBO No. 558689, hereby certify that on this 7th day of February, 2005, I caused a true and accurate copy of the above to be served upon the following counsel of record in the manner set forth below:

Lloyd Gura, Esq. *(via first class mail)*
Mound, Cotton, Wolan & Greengrass
One Battery Park Plaza
New York, NY 10004

Michael K. Robles, Esq. *(via first class mail)*
CADWALADER, WICKERSHAM & TAFT
100 Maiden Lane
New York, NY 10038

Thomas M. Elcock, Esq. *(via hand delivery)*
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109

_____
Adam G. Cohen, BBO No. 558689

02626-0001
356853v1